CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 16 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DONALD LEE WARD,<br>    Petitioner, | Civil Action No. 7:05-cv-00741 |
| v. | **MEMORANDUM OPINION** |
| GENE M. JOHNSON,<br>    Respondent. | By: Hon. James C. Turk<br>Senior United States District Judge |

Petitioner Donald Lee Ward, a Virginia inmate proceeding pro se, brings this action as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2254. Ward challenges the validity of his confinement pursuant to the final judgment of the Circuit Court for the City of Lynchburg of September 6, 2002, convicting him of malicious wounding and sentencing him to twenty years incarceration. Respondent filed a motion to dismiss to which petitioner responded, making the matter ripe for the court's consideration. Upon review of the record, the court concludes that the motion to dismiss must be granted.

I.

On the night of November 27, 2001, Ward came to spend the night at the home of Patricia Franklin, his girlfriend, as he did a couple nights a week. Earlier, Franklin and Ward had gone to a friend's house to socialize. When they came back to Franklin's home, she got ready for bed. She made several telephone calls. As she lay on her bed, talking on the phone, Ward came into the bedroom. Getting next to her on the bed, he asked, "Do you love me?" She said, "Yes, I do." The next thing she knew there was blood everywhere. When Ward pulled a 10-inch-long knife blade out of her stomach, she realized that he had stabbed her. He handed her the knife, and she dropped it beside the bed. She asked, "Why did you do that?" Ward told the person on the other end of the telephone line to call 911. Then, he also called 911.

When the police officers arrived in response to the call, the door was locked. At the sound of the officers' knock, Ward opened the door for them, clad only in boxer shorts, and then ran immediately back upstairs. They found him kneeling on the bed, straddling Franklin's body,

1

applying pressure to the wound in her stomach. Franklin was going in and out of consciousness. When officers asked Ward what had happened, he initially said, "I don't know." When the victim was conscious, she indicated that Ward had stabbed her.[1] Officers took Ward in another room so rescuers could tend to Franklin. Ward then said that Franklin had been peeling potatoes, she and he started "fooling around," and she was stabbed by accident. Ward told the officers the knife was behind the bed. There they found a knife with a 10-inch blade; the knife matched a set of knives found in the kitchen. The only potatoes officers found in the house was a can of Delmonte potatoes, unopened, on the table in the kitchen.

Ward testified that after he and Franklin arrived at her home after having a few beers with friends, he showered and then was looking for some potatoes to fry. He intended to take frozen fries and some fish from the freezer and picked up a knife to use to prepare the fish for cooking. Before he removed the food from the freezer, however, he also picked up a 40-ounce can of beer and opened it. Just then, Franklin called him to the telephone. He went to the bedroom, put the beer and the knife on the side of the bed, and lay on the bed to talk on the telephone. When he was done talking, he tossed the phone on the bed, picked up the beer and the knife, and started to get up. Franklin grabbed for the knife, and they struggled over it. He pulled the knife back to himself, and she pushed him. His knee slipped off the edge of the bed, and the knife went into Franklin's stomach by accident. When asked why he did not let Franklin have the knife, Ward testified that he was nervous because Franklin was a "violent; she's been known to cut people before," and Franklin had recently discovered that he had been "sleeping around." Ward testified that Franklin herself had told him that she had previously been convicted of malicious wounding for stabbing

---

[1] Franklin underwent a two-hour surgery for repair of knife-inflicted injuries to her liver, stomach, small bowel, and aorta. She also suffered a laceration to her arm. Although her surgeon testified at trial that Franklin had recovered well from these potentially fatal injuries, Franklin testified at sentencing that she continued to have pain in her abdomen and had returned to the doctor twelve to fifteen times for pain medication.

2

someone else. Ward admitted that he is also a violent person and has been convicted of felonies.[2]

After hearing this evidence, the trial judge found Franklin's testimony to be credible and Ward's explanation to be incredible. Accordingly, on June 7, 2002, the judge found Ward guilty of malicious wounding. After preparation of a presentence report and hearing additional evidence about Ward's prior criminal convictions, the judge sentenced Ward to twenty years in prison. Ward appealed the conviction to the Court of Appeals of Virginia, then to a three-judge panel of that court, and finally to the Supreme Court of Virginia. After his final appeal was denied in March 25, 2004, Ward filed a petition for a writ of habeas corpus in the Circuit Court for the City of Lynchburg, raising several claims of ineffective assistance of counsel. The circuit court found no merit to these claims under Strickland v. Washington, 466 U.S. 668, 685 (1984). Ward then appealed to the Supreme Court of Virginia; that court dismissed his appeal, finding no error in the judgment below. In his federal petition, Ward alleges the same grounds for relief that he raised in his state habeas petition:

1A. Counsel was ineffective in failing to record the preliminary hearing in order to prepare for effective cross-examination of the Commonwealth's witnesses.

1B. Counsel was ineffective in failing to investigate and subpoena petitioner's requested witnesses.

1C. Counsel was ineffective in failing to investigate and present mitigating evidence during sentencing.

1D. Counsel was ineffective in failing to obtain discovery of Brady material.

2. Counsel was ineffective in failing to request a speedy trial.

3. Counsel was ineffective in failing to make double jeopardy arguments.

II.

As all of Ward's claims were adjudicated by the state courts, this court must review his claims under §2254(d), which reads:

---

[2] At sentencing, Franklin testified that Ward had previously used a gun to break her arm and her jaw and that she feared further, life-threatening injury from him if he were released.

3

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Under §2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

To prove that his counsel's assistance at trial or sentencing or on appeal was so defective as to require reversal of his conviction or sentence, a convicted defendant must meet a two prong standard, showing both counsel's defective performance and resulting prejudice. Id. at 687. First, he must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. Id. at 687-88. Petitioner must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. Id. at 689. Even if he shows that counsel performed incompetently, petitioner is not entitled to habeas relief unless he can satisfy the second Strickland prong by showing that counsel's errors "actually had an adverse effect on [petitioner's] defense." Id. at 693. At a minimum, petitioner must demonstrate "a reasonable probability" that but for counsel's unprofessional errors, the result reached by a reasonable and impartial fact finder would have been different. Id. at 694-95. If it is clear that petitioner has not satisfied one prong of this Strickland test, the court need not inquire whether he has satisfied the other prong. Id. at 697. To be entitled to an evidentiary hearing, a habeas petitioner must, at a minimum, allege facts that, if proven, state a claim on which petitioner would be entitled to relief. Poyner v. Murray, 964 F.2d 1404, 1422 (4th Cir. 1992). See also 28 U.S.C. § 2254(e).

In support of Claim 1A, Ward cites case law finding that failure to record a preliminary

hearing is error in a case one that turns on credibility. Certainly, the credibility of the victim was critical to the Commonwealth's case against Ward. The claim fails under Strickland, however, because Ward fails to point to any differences in testimony at the earlier hearing with which counsel could have impeached witnesses' credibility at trial. Therefore, Ward fails to show any reasonable likelihood that recording the preliminary hearing and additional cross-examination of the Commonwealth's witnesses would have resulted in a different outcome.

In Claim 1B, Ward asserts that counsel should have subpoenaed Mary Robertson to testify that Franklin had previously attacked Ward. He believes David Elliot would have impeached Franklin's testimony that while Ward was talking on the telephone with Elliot, Ward's mood seemed to change, and he grew angry. Ward wanted Vincent Cole to testify that Ward was with Cole all day on November 27, 2001, until 7:30 p.m., to show that Franklin lied when she said she had spent the day with Ward. Finally, Ward asserts that counsel should have subpoenaed Ms. Haskins, the person talking on the telephone to Franklin at the time of the stabbing.

Counsel did subpoena Cole and Robertson, but stated in state habeas proceedings that Ward decided not to use them. Moreover, Ward does not offer affidavits from any of these individuals stating specific facts to which they would have testified. The judge heard Ward's own testimony that Franklin was a violent person whom he feared, but found Ward guilty because Ward's story that he struggled with Franklin for the knife was unbelievable in the face of other evidence. Elliot's testimony about his perception of Ward's mood from the other end of the telephone line would have carried little weight against the emotional testimony of the victim who witnessed Ward's mood first-hand. It is especially difficult to imagine how Haskins' testimony could have been favorable to Ward, as she was slated to be a prosecution witness, who was excused from appearing because she had a sick child and her testimony was cumulative. The record includes other evidence that Ward called 911 after the stabbing. Certainly, Cole's purported "alibi" evidence was all but irrelevant,

5

since the stabbing occurred well after Ward left Cole.[3] Because Ward utterly fails to allege facts demonstrating that testimony from these witnesses would have resulted in a different outcome at trial, he has no claim under Strickland.

Ward argues in Claim 1C that counsel should have produced mitigation evidence at sentencing that Franklin had been twice charged with assault and battery, once with unlawful wounding, and once with assault against Ward, earlier in 2001. As stated, Franklin's violent past was in evidence; nevertheless, the judge determined that this stabbing was no accident caused by Ward's fear of Franklin. In pronouncing sentence, the judge rightly relied on evidence of the injuries Ward had inflicted on Franklin and her stated fear of further injuries she might suffer at his hands. As Ward fails to demonstrate any reasonable likelihood that additional evidence of Franklin's bad acts would have affected the outcome at trial, he has no Strickland claim here.

Ward complains in Claim 1D that counsel failed to obtain discovery in a timely manner. The record indicates that counsel moved for discovery, including Brady material, in the week before trial and received the Commonwealth's oral response on the night before the trial began. Tr. 11-27-2001 at 7-8. Counsel assured the judge that he was ready for trial. Id. Counsel also indicated during state habeas proceedings that he discussed the discovery with Ward before trial. Ward fails to point to any piece of discoverable information or exculpatory evidence that counsel did not receive or indicate how the alleged dearth of discovery prejudiced his defense.[4] He does not identify any

---

[3]Ward asserts that the prosecution knowingly used perjured testimony to convict him when Franklin was allowed to testify that she spent the day with Ward. As Ward fails to demonstrate any likelihood that this statement affected the judge's conclusions about the stabbing, he fails to state a constitutionally significant claim regarding "perjured" testimony here. See Boyd v. French, 147 F.3d 319, 329-30 (4th Cir. 1998).

[4]Ward asserts that with discovery, counsel could have impeached Franklin's testimony that Ward had broken her jaw on a prior occasion, which Ward characterizes as perjury. The prosecutor reminded the judge that he had presided over Ward's trial for that earlier assault, when police officers found pools of blood and Franklin lying on the floor in a fetal position with a broken arm and a broken jaw after Ward pistol-whipped her. Tr. 9-6-2002 at 14. Ward offers absolutely no evidence indicating that Franklin's jaw was not broken. In any event, the court finds no reasonable probability that the specific condition of Franklin's jaw after the earlier assault affected the judge's finding that Ward was guilty of maliciously wounding her in the stabbing incident or the sentencing determination based on the life-threatening nature of her injuries in the later incident.

6

specific prejudice stemming from counsel's alleged failure to discuss the discovery with him in detail before trial or any other trial strategy counsel might have pursued as a result of additional discussions. This claim clearly fails under both prongs of Strickland.

In support of his speedy trial claim, Claim 2, Ward offers a time line. He was arrested on November 28, 2001, and had a preliminary hearing in Juvenile and Domestic Relations Court on February 19, 2002. The case was stamped certified to the grand jury on February 20, 2002, by the circuit court. During this period, Ward was held without bond. His trial was conducted on June 7, 2002.

Virginia Code § 19.2-243 provides that a defendant held without bond shall be tried within five months of the date on which the circuit court finds probable cause. The time actually begins to run on the day after that finding. Robinson v. Commonwealth, 502 S.E.2d 704 (1998). A claim under the separate, Sixth Amendment right to a speedy trial, triggered by arrest or indictment, generally does not arise until the delay of trial approaches one year. Doggett v. United States, 505 U.S. 647, 652 n. 1 (1992). Ward was tried 107 days after the circuit court's certification of the charges, well within either of these time limits. Therefore, he had no speedy trial claim. Counsel cannot be ineffective for failing to raise a meritless objection on this ground. This claim fails under both prongs of Strickland.

Claim 3 asserts that counsel should have argued a double jeopardy claim because Ward was originally charged with malicious wounding of Patricia Franklin and unlawful wounding in the commission of a felony. This claim has no support in the record. Counsel moved to dismiss the malicious wounding charge, and the court took the motion under advisement. Tr. 6-7-2002 at 67-70. The judge found Ward guilty only of malicious wounding. Id. at 98. At sentencing, the judge dismissed the unlawful wounding charge. Tr. 9-6-2002 at 12. As Ward was not tried twice or sentenced twice for the same conduct, he had no Double Jeopardy claim. North Carolina v. Pearce, 395 U.S. 711, 717 (1969). His ineffective assistance claim thus fails under both prongs of Strickland.

7

III.

In conclusion, Ward fails to allege facts stating any claim of ineffective assistance under the Strickland standard. Therefore, the court finds no material fact in dispute. As the state courts' disposition of his claims was not contrary to, or an unreasonable application of, established federal law, and was not based on an unreasonable determination of facts, the motion to dismiss will be granted, pursuant to § 2254(d). An appropriate order shall be issued this day.

The petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a circuit court of appeals justice or this court issues a certificate of appealability, pursuant to 28 U.S.C. §2253( c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. §2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, the Court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal, petitioner must file a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for the respondent.

ENTER: This 16th day of May, 2006.

/s/ James C. Turk
Senior United States District Judge

8